## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jennifer Herrmann,

                Plaintiff,

                                      Civ. No. 08-977 (RHK/JJK)
                                      **MEMORANDUM OPINION**
                                      **AND ORDER**

v.

ExpressJet Airlines, Inc. and
Continental Airlines, Inc.,

                Defendants.

Michael A. Klutho, David E. Camarotto, Bassford Remele, PA, Minneapolis, Minnesota, for Plaintiff.

Daniel A. Haws, Kari L. Gunderman, Murnane Brandt, PA, St. Paul, Minnesota, for Defendants.

## INTRODUCTION

In this negligence action, Plaintiff Jennifer Herrmann has sued Defendants ExpressJet, Inc. and Continental Airlines, Inc. (collectively, "Continental")[1] for injuries she sustained while climbing a set of stairs at the Minneapolis-St. Paul International Airport ("MSP"). Continental now moves for summary judgment. For the reasons set forth below, the Court will deny the Motion.

---

[1] ExpressJet operates certain aircraft for Continental under the Continental name.

**BACKGROUND**

Most of the key facts are not in dispute; where they are, they are recited in the light most favorable to Herrmann (with citations to the record). On November 16, 2006, Herrmann was a passenger on Continental flight 2980 from Newark, New Jersey to MSP. When her plane landed, two of Continental's three gates at the airport (designated E7 and E9) were already occupied, and its remaining gate could not accommodate a regional jet. Rather than wait for gate E7 or E9 to become available, Continental opted to undertake a "ramp operation." This meant that the plane would be parked between the two gates – a so-called "hardstand" – and passengers would be deplaned by sending them down an external staircase wheeled up to its side. The passengers would then walk a short distance across the tarmac to a different set of "service" stairs, climb those stairs, and walk into the terminal.

The service staircase at issue is designed primarily for use by Continental employees. (Helgeson Dep. Tr. at 35.) It is attached to the E7 jetbridge[2] and employs "variable riser" stairs, designed to raise and lower with the jetbridge as it moves up and down to accommodate different-sized aircraft. Each step is made of crisscrossing metal creating many large holes, or grates, that allow snow and rain to fall through rather than accumulate on the step's tread. The metal on each step is serrated, or clawed, in order to provide greater traction for footwear.

---

[2] A jetbridge (or jetway) is an enclosed, movable connector that links a gate to an airplane for boarding and disembarking passengers without exposing them to the elements.

In total, the service staircase comprises 24 steps.  The first step is fixed approximately 13 inches above the ground – that is, a person climbing the staircase has to raise his or her foot more than 13 inches off the tarmac to ascend the first step.  On the date of the incident, the height at which the jetbridge was set caused each of the subsequent 22 steps to have a "riser" (height) of approximately 2.5 to 2.75 inches.  The final step, which leads to a platform and then to the jetbridge, was higher, with a riser of approximately 5 inches.

Herrmann deplaned down the rolling staircase – which had fixed risers and closed treads – carrying her purse and a wheeled carry-on suitcase.  She then walked over to the service staircase, at which point she noticed the large openings in each step.  She was wearing boots with heels several inches high, and she was concerned about catching a heel in one of the grates.  She did not ask a Continental employee for another way into the terminal because no one was around the staircase at the time.  (Herrmann Dep. Tr. at 46-48.)  Instead, she opted to wait until all other passengers had completely climbed the staircase before climbing herself, using only the balls of her feet on each step to avoid "catching" a heel.  She successfully navigated the first 23 steps of the service staircase, including the initial 13-inch step.  At the top step, which led to the platform, Herrmann fell and suffered a serious leg injury.  She does not know what caused her to fall, although the evidence suggests that on the date of the incident, she apparently "believed" that one of her heels had caught in the top step's grates.

Herrmann commenced the instant action against Continental seeking damages for

her injuries. Continental now moves for summary judgment, arguing that Herrmann cannot prove a *prima facie* case of negligence.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**ANALYSIS**

Under Minnesota law,[3] a negligence claim requires a plaintiff to prove: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the breach proximately caused harm to the plaintiff; and (4) damage. E.g., Gilbertson v. Leininger, 599 N.W.2d 127, 130 (Minn. 1999). A defendant "is entitled to summary judgment when the record reflects a complete lack of proof on any of the four essential elements of the claim." Gradjelick v. Hance, 646 N.W.2d 225, 230 (Minn. 2002). Here, Continental seeks summary judgment on two grounds. First, it argues that Herrmann cannot proffer any evidence establishing that it proximately caused her injuries. (Def. Mem. at 14-31.) Second, it argues that even if Herrmann were able to proffer such evidence, her claims should still be dismissed because the stairs were in an open and obvious condition and, as a result, it owed her no duty. (Id. at 31-35.) The Court disagrees with both arguments.

**I.     Duty**

"Any legal analysis of an action . . . alleging negligence must begin with an inquiry into whether the [defendant] owed the [plaintiff] a duty." Louis v. Louis, 636 N.W.2d 314, 318 (Minn. 2001). Accordingly, the Court begins with Continental's second argument: the stairs were in an open-and-obvious condition and, hence, Continental owed no duty to Herrmann.

---

[3] Neither party suggests that any other state's law applies in this case. See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003) (law of forum state applies by default where parties do not raise choice-of-law issue).

### A. The common-carrier relationship between Continental and Herrmann

"Generally, the existence of a legal duty is an issue for the court to determine as a matter of law." Id.  A special relationship giving rise to a duty exists between common carriers, such as Continental, and their passengers.  E.g., Gilbertson, 599 N.W.2d at 131.[4] Common carriers owe their passengers "the highest degree of care for the[ir] safety," Vaughn v. Nw. Airlines, Inc., 558 N.W.2d 736, 742 (Minn. 1997), which does not end the moment a passenger exits the carrier's vehicle.  Rather, the carrier's obligation persists until the passenger has had a reasonable opportunity to move from the zone of danger posed by the vehicle's operation to a place of safety.  Patton v. Minneapolis St. Ry. Co., 77 N.W.2d 433, 435 (Minn. 1956).  In the case of an airline, the duty includes the obligation to provide a safe means of passage between an airplane and the terminal.  See Rogers v. W. Airline, 602 P.2d 171, 175 (Mont. 1979) (airline's duty "extends to passengers embarking and debarking and while they are passing back and forth to and from the terminal"); Atcheson v. Braniff Int'l Airways, 327 S.W.2d 112, 118 (Mo. 1959) ("There is no question but that a carrier by air has the duty to provide a reasonably safe means for passengers to board its aircraft, and for disembarking of passengers, including a safe method or way of passage to and from the airplane to the terminal area for passengers.") (citations omitted); see also MacDonald v. Air Canada, 439 F.2d 1402,

---

[4] A "common carrier" is "one who holds himself out to the public as engaged in [the] business of transportation of persons . . . from place to place for compensation, and who offers services to the public generally."  Black's Law Dictionary 275 (6th ed. 1990); see also Hammerlind v. Clear Lake Star Factory Skydiver's Club, 258 N.W.2d 590, 593 n.3 (Minn. 1977).

1405 (1st Cir. 1971) (Warsaw Convention case; "the operation of disembarking has terminated by the time the passenger has descended from the plane by the use of whatever mechanical means have been supplied *and has reached a safe point inside of the terminal*") (emphasis added).

The foregoing makes clear that Continental's duty argument fails because it misapprehends the nature of the parties' relationship. Continental has not cited – and the Court has not located – any cases in which an open-and-obvious condition discharged a *common carrier* of its duty to provide the "highest degree of care" for passenger safety – that is, "the utmost caution used by very careful persons." Lindstrom v. Yellow Taxi Co. of Minneapolis, 214 N.W.2d 672, 674 n.2 (Minn. 1974). Rather, Continental's cases concern the duty owed by a landowner to those invited onto his property, which is simply a duty of reasonable care. Peterson v. Balach, 199 N.W.2d 639, 647 (Minn. 1972). Because the duty owed by a common carrier is greater than that owed by a landowner, Nelson v. Demenge, No. C1-92-1390, 1993 WL 152311, at *2 (Minn. Ct. App. May 11, 1993), these cases are inapposite. Under the facts here, Continental was obliged to provide its passengers, including Herrmann, a safe means to leave the tarmac – where airplanes and other large and dangerous pieces of equipment are moving – and enter the airport terminal. See Patton, 77 N.W.2d at 435.

### B.  Even if only a landowner, Continental's argument would fail

In any event, even if Continental were correct that its relationship with Herrmann was landowner/entrant rather than common carrier/passenger, the Court's analysis would not change.  Continental correctly notes that a landowner is not liable for a condition existing on his land when the danger posed thereby is obvious to the entrant.  E.g., Baber v. Dill, 531 N.W.2d 493, 495-96 (Minn. 1995).  But the Court cannot conclude that the allegedly dangerous condition of the service staircase here was open and obvious as a matter of law.

Notably, whether a condition is open and obvious typically is a question for the jury, e.g., Olmanson v. LeSueur County, 693 N.W.2d 876, 881 (Minn. 2005), because "Minnesota has recognized a danger to be 'obvious' as a matter of law only in limited circumstances," Davis v. St. Ann's Home, No. A06-1968, 2008 WL 126607, at *3 (Minn. Ct. App. Jan. 15, 2008).  Here, Herrmann's theory of liability is that the height difference in the staircase's final step was dangerous and caused her to fall.[5]  That step was only approximately 2.5 inches higher than the preceding 22 steps.  In the Court's view, reasonable minds could conclude that such a minor height difference was not so apparent that it should have been obvious to "a reasonable [person] 'in the position of the [plaintiff], exercising ordinary perception, intelligence and judgment.'"  Louis, 636

---

[5] Herrmann's Motion papers did not clearly explicate her theory in this case.  At oral argument, however, she explained that her claims are predicated on the height difference in the final step, and not catching her heel in that step's grates.  The Court considers the latter issue abandoned and will permit Herrmann to argue only the former theory at trial.

N.W.2d at 321 (quoting Restatement (Second) of Torts § 343A cmt. b (1965)); cf. Mohn v. Schussler, No. CX-96-1364, 1996 WL 734855, at *1 (Minn. Ct. App. Dec. 24, 1996) (step approximately 8 to 10 inches high was open and obvious). Indeed, in an analogous case, the Supreme Court of North Carolina held that a 2-inch height difference between steps could not be said "as a matter of law to be an open and obvious defect." Lamm v. Bissette Realty, Inc., 395 S.E.2d 112, 115 (N.C. 1990).

Continental points out that Herrmann admitted she could see the height of the final step, but this is legally irrelevant. What matters is the difference in that step's height from the steps immediately prior to it, and Continental has proffered no evidence that Herrmann was aware of that height difference. See Mac Int'l-Savannah Hotel, Inc. v. Hallman, 595 S.E.2d 577, 579-80 (Ga. Ct. App. 2004) ("Nothing in the evidence establishes that the plaintiff here knew the stairs were an uneven trip hazard."). Moreover, whether a condition is open and obvious is an objective question. Louis, 636 N.W.2d at 321. In other words, the issue is whether a *reasonable person* would have seen and appreciated the risk that the final step's height difference posed, not whether Herrmann actually observed it. Id. Given the minimal change in height between the final step and the steps immediately preceding it, the Court believes that a reasonable jury could answer that question in the negative.

Regardless, Herrmann's purported knowledge would not absolve Continental of liability because even where a danger is known (or obvious), a landowner owes a duty if harm to an invitee should be anticipated despite that knowledge or obviousness. Baber,

531 N.W.2d at 495-96 (quoting Restatement (Second) of Torts § 343A (1965)); accord Louis, 636 N.W.2d at 319.  In the Court's view, whether Continental should have anticipated that harm might befall its passengers from using the service staircase, even if Herrmann (or others) knew or should have known of the staircase's danger, presents a jury question.  See Olmanson, 693 N.W.2d at 881.  A reasonable jury could conclude that Continental should have anticipated passengers might trip on a stair approximately 2.5 inches higher than 22 steps of equal height leading up to it, particularly when burdened with luggage or other items.  See Davis, 2008 WL 126607, at *4 (jury should decide whether assisted-living facility could anticipate that overlapping carpet might cause injuries, given age of residents at facility, fact that many used walkers or wheelchairs, and facility knew persons would be traversing carpeted area).

The Court is cognizant of the exception to the anticipation-of-harm limitation carved out by the Minnesota Supreme Court – namely, some dangers are "so obvious" that a landowner owes an entrant no duty, even though he reasonably should anticipate harm.  Louis, 636 N.W.2d at 321-22.  But as the Minnesota Court of Appeals has stated:

> A cynic might suggest that our cases imply that where the danger is *really* obvious, there is no landowner duty, but where the danger is really, *really* obvious, there is a duty, yet, where the danger is really, really, *really* obvious, there is again no duty.  Our appellate decisions have not clearly explained the difference between a danger that is so obvious that the landowner must warn against the likely injury despite the obvious danger and a danger that is a bit more obvious such that the entrant now needs no warning.

Davis v. Walter, No. A06-457, 2007 WL 3577, at *4 (Minn. Ct. App. Jan. 2, 2007); see also Baber, 531 N.W.2d at 496 (noting, without defining, the "fine" distinction between

obvious conditions that require a warning and those that do not). In the Court's view, this succinctly explains why Herrmann's claims must proceed to a jury. The Court cannot conclude, as a matter of law, that the final step's riser was "really, really, *really* obvious," thereby relieving Continental of a duty to Herrmann. See Louis, 636 N.W.2d at 321-22 (noting that dangers "so obvious" as to eliminate duty included "walking across a 20-foot square pool of water" and "skydiving over a lake"); Bailly v. Thompson, Civ. No. 06-4925, 2008 WL 2229022, at *3 (D. Minn. May 27, 2008) (Kyle, J.) (applying Minnesota law) (attempt to capture wild horse); see also Hallman, 595 S.E.2d at 579-80 (while certain activities "may be inherently dangerous, climbing stairs should not be").

For all of these reasons, Continental's duty argument fails.[6]

## II. Causation

---

[6] In the "duty" section of its brief, Continental sometimes switches between the terms "open-and-obvious conditions" and "assumption of risk." (Compare Def. Mem. at 31 (arguing Herrmann "cannot escape her assumption of risk") with id. at 35 ("The law does not impose a duty upon a landowner to protect an entrant against . . . open and obvious conditions.").) These legal terms of art are closely related, but not interchangeable. See Walter, 2007 WL 3577, at *3. As explained above, an open-and-obvious condition may, in some circumstances, eliminate the existence of a legal duty. Similarly, under the doctrine of "primary" assumption of risk, a plaintiff's claim is barred if she knew of and appreciated a risk, had a chance to avoid it, but voluntarily chose to accept it. See, e.g., Bailly, 2008 WL 2229022, at *4 n.4. "Whether a person primarily assumed a risk is a question for the jury unless the evidence is conclusive," which is "uncommon and [occurs] only in limited circumstances." Walter, 2007 WL 3577, at *4; accord Bailly, 2008 WL 2229022, at *4 n.4 (noting that primary assumption of risk "generally applies to cases that involve inherently risky activities").
  To the extent Continental argues it cannot be liable because Hermann primarily assumed the risk when she climbed the stairs, its argument fails on two fronts. First, there is no evidence that Herrmann knew of and appreciated the risk posed by the height difference in the final step. Second, there is a fact dispute as to whether any Continental employees were around the staircase at the time Herrmann chose to climb it. Hence, even if she knew of and appreciated the risk posed by the final step, the evidence suggests that Herrmann had no way to avoid it because she could not find another way into the terminal.

Continental raises two arguments concerning causation. First, it argues that Herrmann's claims fail because she admitted in her deposition that she does not know why she fell. (Def. Mem. at 15-17.) Second, it argues at length that the opinions of her causation expert, Jon Dahl, fail to satisfy Federal Rule of Evidence 702 and should not be considered by the Court. (Id. at 17-29.)[7] Based on these arguments, Continental asserts that Herrmann lacks any evidence of causation and, accordingly, her claims cannot survive summary judgment.

### A.   Herrmann's knowledge

As for the first argument, it is not fatal to Herrmann's case that she does not know why she fell. See Lyons v. SCNEI, Inc., 262 N.W.2d 169, 171 (Minn. 1978) (jury "was free to [infer] from the circumstantial evidence . . . that [a] portable rack was the cause of the [plaintiff's] injury" even though plaintiff was unsure what caused her fall); see also Scheerer v. Hardee's Food Sys., Inc., 16 F.3d 272, 273-74 (8th Cir. 1994) (applying Missouri law) (genuine issue on causation despite fact that plaintiff did not know what caused her to slip and fall); Ganoe v. Koch Refining Co., 106 F.3d 405, 1997 WL 34416, at *1 (8th Cir. Jan. 30, 1997) (unpublished) (applying Minnesota law) (following Scheerer). The issue is not Herrmann's knowledge, but rather whether she has proffered sufficient evidence from which a reasonable jury could conclude that she fell because of

---

[7] Continental also assails the opinions of Herrmann's other expert, John Hoeper, but Hoeper did not opine on the cause of her fall. Accordingly, the Court need not (and does not) consider his opinion.

the height difference in the service staircase's top step.  See Evans v. Mathis Funeral Home, Inc., 996 F.2d 266, 269 (11th Cir. 1993) (applying Georgia law) ("It is not necessary that [the plaintiff] herself know what caused her to fall; rather, she need only establish a causal connection between the [dangerous] condition and the injury, and this causal connection may be established from surrounding circumstances.").  Hence, Herrmann may rely on circumstantial evidence – and reasonable inferences drawn from that evidence – to overcome Continental's Motion.  See, e.g., Do v. Wal-Mart Stores, 162 F.3d 1010, 1013 (8th Cir. 1998) (applying Minnesota law) ("Several cases highlighted by the Supreme Court demonstrate that the nonmoving party may draw upon favorable inferences from circumstan[tial] evidence to defeat summary judgment.").

Continental argues that "it would be utter speculation to assume that it was the stairs" that caused Herrmann to fall.  (Def. Mem. at 17.)  And Continental is correct that while a negligence claim "may be established by circumstantial evidence, it cannot be founded upon speculation and conjecture about causation."  Smith v. Runk, 425 N.W.2d 299, 301 (Minn. Ct. App. 1988).  Indeed, "circumstantial evidence must be more than simply consistent with [a party's] theory of causation; reasonable minds must be able to conclude from the circumstances [that] the theory adopted outweighs and preponderates over opposing theories."  Schweich v. Ziegler, Inc., 463 N.W.2d 722, 730 (Minn. 1990).

> But the fact that
>
> proof of causation is inferred from circumstantial evidence does not render that proof inadmissibly speculative.  Indeed, the jury, as the finder of fact, will necessarily speculate in determining the propriety of inferring causation from

13

> circumstantial evidence: "[w]henever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference."

DiRico *ex rel.* Barker v. Restart, Inc., No. A03-1173, 2004 WL 772094, at *6 (Minn. Ct. App. Apr. 13, 2004) (quoting Lavender v. Kurn, 327 U.S. 645, 653 (1946)).  Moreover, "[p]roximate cause is a question of fact [that] ordinarily must be left to the jury."  Black v. Stumvoll, 374 N.W.2d 782, 784 (Minn. Ct. App. 1985).  As long as circumstantial evidence provides "a reasonable basis" for a jury to infer "that the alleged negligence was the cause of the injury complained of, it is sufficient proof of the causal connection." DiRico, 2004 WL 772094, at *6 (quoting Majerus v. Gueslow, 113 N.W.2d 450, 455 (Minn. 1962)); accord McKay's Family Dodge v. Hardrives, Inc., 480 N.W.2d 141, 146 (Minn. Ct. App. 1992).

In the Court's view, sufficient circumstantial evidence exists in this case to create a jury question on causation, because a reasonable jury could conclude that the final step's unequal riser was the cause of Herrmann's fall.  There is no dispute that the final step was higher than the 22 steps immediately preceding it.  Nor is there any dispute that Herrmann successfully navigated each of those steps and was attempting to avoid catching her heel as she climbed.  Under these facts, one could reasonably conclude that the final step's height difference, and not some other reason, caused her to fall.  Notably, several courts have recognized that a variation in height between steps of a staircase "tends to cause people to trip."  Hallman, 595 S.E.2d at 579; accord, e.g., Kilgore v. Carson Pirie

Holdings, Inc., 205 Fed. Appx. 367, 375 (6th Cir. 2006) (noting it is common sense that "a stairway . . . is safest when its risers are of an equal height," and risers "of an unequal height pose some danger to persons traversing the stairs"); Lamm, 395 S.E.2d at 115 ("A jury could find that th[e] variation in riser height . . . was a hidden defect which defendants should have known about and that defendants had a duty to warn plaintiffs that the last step down was deeper than the previous two steps."); Glanzberg v. Kauffman, 788 So. 2d 252, 253-54 (Fla. Dist. Ct. App. 2000) (jury could conclude steps were dangerous where they lacked uniform heights and depths and "confused the body's gait when walking and made it highly likely that eventually someone would fall[,] particularly someone that was not familiar with it") (internal quotation marks omitted).  This is especially true when a person climbing the steps is carrying heavy luggage or other items and could be distracted by the frenetic activities taking place on an airport tarmac.

Continental may be able to persuade a jury that Herrmann fell (at least in part) because she caught her heel in the final step's grates or due to her own inattentiveness, a gust of wind, a tectonic shift, or some other reason.  But the question is whether reasonable minds could conclude that Herrmann's theory – the height difference in the service staircase's final step caused the fall – "outweigh[s] and preponderate[s]" over such alternatives.  Schweich, 463 N.W.2d at 730.  The Court acknowledges that this is a close question.  Yet, it believes that a reasonable jury could infer from the facts here that the final step's height difference more likely than not caused her to fall, based on her having climbed the staircase without incident until the final step and taking precautions

15

not to catch her heel in the staircase's grates.  Accordingly, she has proffered sufficient circumstantial evidence, albeit barely, to survive summary judgment.  See <u>Lutz v. Lilydale Grand Cent. Corp.</u>, 250 N.W.2d 599, 600 (Minn. 1977) (jury could infer that plaintiff slipped on ice in parking lot even though she did not recall seeing ice where she fell and had been exercising care to avoid icy spots); <u>Smith v. Kahler Corp.</u>, 211 N.W.2d 146, 150 (Minn. 1973).

      **B.**      **Expert testimony**

Continental's second argument – the Court should not consider Dahl's testimony – merits little discussion.  Continental's protestations notwithstanding (<u>see</u> Reply at 3, 6), Herrmann does not need expert testimony to establish causation in this case:  "when within the common knowledge of a lay person, expert testimony [on causation] is not necessary."  <u>Tousignant v. St. Louis County</u>, 615 N.W.2d 53, 59 (Minn. 2000); <u>accord</u> <u>Gross v. Victoria Station Farms, Inc.</u>, 578 N.W.2d 757, 762 (Minn. 1998) ("Expert opinion is required to prove causation [only where] the issue is outside the realm of common knowledge."); <u>Baker v. Abo</u>, Civ. No. 01-1248, 2003 WL 21639151, at *4 (D. Minn. July 2, 2003) (Tunheim, J.) (applying Minnesota law) ("expert testimony is not always required" to establish causation) (citations omitted).  Whether the staircase's unequal risers could cause someone to fall is not outside a typical juror's knowledge.  Applying common sense, a reasonable jury could conclude that the height difference in the final step of the service staircase was the proximate cause of Herrmann's fall.  See <u>Evans</u>, 996 F.2d at 268 (affirming district court's order precluding expert testimony on

cause of plaintiff's fall, where expert placed blame on, *inter alia*, uneven step heights and dim lighting; "the effects of [these] factors . . . were all within the common knowledge of the jurors").[8]

## CONCLUSION

While "[p]roof of negligence in the air, so to speak, will not do," Palsgraf v. Long Island R.R. Co., 162 N.E. 99, 99 (N.Y. 1928), Herrmann has proffered sufficient evidence to support her negligence claims against Continental. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Continental's Motion for Summary Judgment (Doc. No. 18) is **DENIED**.

Dated: May 5, 2009                                    s/Richard H. Kyle
                                                      RICHARD H. KYLE
                                                      United States District Judge

---

[8] Continental cites American Family Insurance Group v. JVC Americas Corp., Civ. No. 00-27, 2001 WL 1618454 (D. Minn. Apr. 30, 2001) (Doty, J.), to argue that expert testimony is required, but that case is inapposite. There, the plaintiff insurance company sued the defendant, an electronics manufacturer, alleging that a defect in the defendant's CD player caused a fire at the plaintiff's insured's home. The court excluded the opinion of the plaintiff's expert because he was not qualified to render an opinion on the origins of the fire. Id. at *4. In the absence of that evidence, the jury could only speculate whether the defendant's product or some other apparatus had caused the fire because, unlike here, that is a matter beyond the ken of a typical juror.